# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

| | |
|---|---|
| DAVID K. MANN, individually; ELIZABETH S. MANN; DELANEY MANN; and M.H.M., MINOR CHILD, BY AND THROUGH HER FATHER AND NEXT FRIEND, DAVID K. MANN, | CV 10-128-M-DWM-JCL |
| Plaintiffs, | FINDINGS & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| vs. | and |
| REDMAN VAN & STORAGE CO., INC.; and ROWDY B. ANDERSON, | ORDER |
| Defendants. | |

_____

This negligence action comes before the Court on several pretrial motions filed by Defendants Redman Van & Storage Co., Inc. and Rowdy Anderson (collectively "Defendants"). For the reasons set forth below, Defendants' motions are properly denied.

PAGE 1

**I. Background**

This case arises out of a motor vehicle accident that took place on July 8, 2008, when a tractor trailer owned by Redman Van & Storage Co., Inc. ("Redman") and driven by Defendant Rowdy Anderson ("Anderson") collided with a passenger vehicle occupied by Plaintiffs David and Elizabeth Mann and their two children ("the Manns"). At the time of the accident, both vehicles were traveling southbound on Rocky Point Road just north of Polson, Montana. Anderson was making a left hand turn into private driveway when the truck he was driving collided with the Mann vehicle, which was attempting to pass him on the left. The Manns claim that they had no warning that Anderson was about to attempt a left-hand turn because the tractor trailer's brake lights and turn signals were not operable.

The Manns filed suit against Redman and Anderson in November 2010, seeking damages for injuries they allegedly sustained in the accident. The Manns bring claims against both Defendants for negligence, loss of consortium, and punitive damages. They seek to recover against Redman based on theories of both direct and vicarious liability. Dkt. 1, ¶¶ 36-37, 43. In particular, the Manns claim that Redman should be held directly liable for its own alleged negligence in hiring, training, and supervising Anderson, and in failing to maintain the tractor trailer in

PAGE 2

reasonable, safe, and operable condition.  Dkt. 1, ¶ 36.  The Manns also seek to hold Redman vicariously liable for Anderson's alleged negligence while driving in the course and scope of his employment.  Dkt. 1, ¶¶ 37, 43.

The Defendants have moved for summary judgment on the Manns' direct negligence claims against Redman on the ground that Redman has accepted vicarious liability for any negligence on Anderson's part in causing the accident.  Defendants have also filed several motions in limine, a motion to strike the Manns' punitive damages claim, and a motion to bifurcate the trial into separate liability and damages phases.

## II.     Motion for Summary Judgment and Motion to Strike

### A.     Legal Standards

A party moving for summary judgment bears the burden of demonstrating "that there is no genuine dispute as to any material fact and the movant is entitled ot judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A movant may satisfy that burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

PAGE 3

with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.   And where the nonmoving party bears the burden of proof at trial, the moving party may satisfy its initial burden on summary judgment by showing that there is an absence of evidence in the record to support the nonmoving party's claims.  *Celotox*, 47 U.S. at 325.

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories of admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.* 477 U.S.  317, 324 (1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings...."  *Anderson*, 477 U.S. at 248.

### B. Discussion

Defendants frame their motion for summary judgment in rather broad terms, asking that the Court rule in their favor on the Manns' "direct negligence claims

against Redman." Dkt. 26, at 2. Noting that "Redman has accepted vicarious liability for any negligence attributed to Anderson for his actions on the date of the accident," Defendants argue the Manns "cannot also attempt to recover [against Redman] under direct negligence theories." Dkt. 26, at 2.

As noted, the Manns' direct negligence claim against Redman has two distinct components – one relating to the condition of the tractor trailer involved in the accident, and one relating to Redman's allegedly deficient hiring, training, and supervision of Anderson. With regard to the first component, the Manns allege, for example, that Redman failed "to maintain the semi-truck and trailer in reasonable, safe, and operable condition" and negligently sent the "tractor-trailer out onto the roads of Montana – at night – without working trailer, brake, and/or signal lights." Dkt. 1, ¶ 36. As to the second component, the Manns accuse Redman of negligently supervising Anderson because it allowed him to drive without operable trailer lights, and claim that Redman failed to train Anderson "sufficiently that he would not drive a semi-truck and trailer at night without operable trailer lights." Dkt. 1, ¶ 36.

Although Defendants move broadly to summarily dismiss the Manns' "direct negligence claims against Redman," their supporting argument focuses entirely on the negligent training and supervision component of those claims.

Defendants begin by pointing to the fact that Redman has admitted respondeat superior liability for any liability ultimately attributed to Anderson. Because Redman has accepted vicarious liability for Anderson's actions, Defendants maintain that the Manns' direct liability negligent training and supervision claim should be dismissed as duplicative.

The Montana Supreme Court has not yet confronted the question of whether such a direct liability claim should be dismissed if the defendant employer has accepted vicarious liability for the actions of its employee.[1] Where, as here, "the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Ticknor v. Choice Hotels Intern., Inc.*, 256 F.3d 931, 939 (9th Cir. 2001).

As both parties recognize, this Court has previously predicted that the Montana Supreme Court would follow the majority rule on this issue, "which is 'that once an employer has admitted respondeat superior liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability.'" *Parrick v. FedEx Grounds Package Sys.,*

---

[1] Sitting in diversity jurisdiction, this Court looks to the substantive law of Montana as the forum state for purposes of the ensuing analysis. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

*Inc.*, 2010 WL 1981451 *2 (D. Mont. Apr. 21, 2010) (quoting *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995)); *St. Vincent v. Werner Enterprises, Inc.*, CV-08-73-M-DWM, Dkt. 45 (Findings & Recommendation, Apr. 2, 2009) and Dkt. 46 (Order Adopting Findings and Recommendation, May 7, 2009). "The logic underlying this majority view is that 'evidence of negligent hiring, training, supervision or retention becomes unnecessary, irrelevant and prejudicial' if the employer has already admitted vicarious liability under respondeat superior." *Parrick*, 2010 WL 1981451 *2 (quoting *Lee v. J.B. Hunt Transport, Inc.*, 308 F.Supp.2d 310, 313 (S.D.N.Y. 2004)).

As this Court has also recognized, however, "there is a well-established exception to this majority rule in cases where the plaintiff has asserted a valid claim for punitive damages." *Parrick*, 2010 WL 1981451 *3 (citing *Lee*, 308 F.Supp.2d at 315; *Durben v. American Materials,* Inc., 503 S.E.2d 618, 619 (Ga. App. 1998) and *Watson v. Strack*, 773 N.Y.S.2d 676 (N.Y.A.D. 4th Dept. 2004)). In such cases, it can no longer "be said that the negligence claims against the employer are merely duplicative of the respondeat superior claim." *Durben*, 503 S.E.2d at 619. This is so because the claim for negligent hiring, supervision, and training "exposes the employer to the possibility of additional liability in the form of punitive damages." *Parrick*, 2010 WL 1981451 *3.

Defendants acknowledge that this exception to the majority rule is implicated here because the Manns have asserted a claim for punitive damages against both Redman and Anderson. Dkt. 26, at 7. According to Defendants, however, the claim should be stricken because there is no evidence to support an award of punitive damages against either of them.[2] Assuming they prevail on their motion to strike the punitive damages claim against Redman, Defendants argue that the Manns' negligent hiring, training, and supervision claim should likewise be dismissed. Whether Defendants are entitled to summary judgment on the Manns' negligent hiring, training, and supervision claim thus depends on whether the Manns' punitive damages claim against Redman survives the motion to strike.[3]

To prevail on their claim for punitive damages, the Manns must ultimately establish by clear and convincing evidence that Redman was "guilty of actual

---

[2] The Manns state in their response brief that they "hereby dismiss their claims for punitive damages against Anderson." Dkt. 38, at 8 n. 2. Thus, the Court will confine its discussion to the question of whether the Manns' punitive damages claim against Redman should be stricken.

[3] Although Defendants characterize their motion as one to strike, they are in substance asking the Court to issue a summary judgment ruling dismissing the Manns' punitive damages claim based on the lack of supporting evidence. Both parties have briefed the motion as if it were one for summary judgment. Defendants have submitted a statement of uncontroverted facts in support of the motion, and the Manns have responded with a statement of genuine issues. Because the motion to strike is, in substance, a motion for summary judgment, the Court will apply the well-established summary judgment legal standards for purposes of this discussion.

fraud or actual malice." Mont. Code Ann. § 27-1-221(1) and (5). A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and deliberately proceeds to act with indifference to, or in conscious or intentional disregard of, the high probability of injury to the plaintiff. Mont. Code Ann. § 27-1-221(2).

The Manns allege that Redman acted with the requisite level of intent, thereby justifying an award of punitive damages, in the following specific ways: (1) by "[k]nowingly sending a tractor-trailer out onto the roads of Montana – at night – without working trailer, brake and/or signal lights; (2) by consciously failing "to adequately hire, train, and supervise Anderson"; (3) by consciously failing "to maintain the semi-truck and trailer in reasonable, safe, and operable condition," and; (4) by consciously failing "to maintain and/or enforce adequate safety policies and procedures." Dkt. 1, ¶ 64.

Defendants maintain there is no evidence to support any of these allegations, and no way a reasonable jury could determine, by clear and convincing evidence, that Redman is subject to punitive damages. Dkt. 29, at 2. The Court disagrees.

fraud or actual malice." Mont. Code Ann. § 27-1-221(1) and (5). A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and deliberately proceeds to act with indifference to, or in conscious or intentional disregard of, the high probability of injury to the plaintiff. Mont. Code Ann. § 27-1-221(2).

The Manns allege that Redman acted with the requisite level of intent, thereby justifying an award of punitive damages, in the following specific ways: (1) by "[k]nowingly sending a tractor-trailer out onto the roads of Montana – at night – without working trailer, brake and/or signal lights; (2) by consciously failing "to adequately hire, train, and supervise Anderson"; (3) by consciously failing "to maintain the semi-truck and trailer in reasonable, safe, and operable condition," and; (4) by consciously failing "to maintain and/or enforce adequate safety policies and procedures." Dkt. 1, ¶ 64.

Defendants maintain there is no evidence to support any of these allegations, and no way a reasonable jury could determine, by clear and convincing evidence, that Redman is subject to punitive damages. Dkt. 29, at 2. The Court disagrees.

As to the negligent hiring, training, and supervision claim, the Manns have come forward with enough evidence to give rise to a genuine issue of fact as to whether Redman acted with actual malice. To begin with, the Manns point to evidence upon which a reasonable trier of fact might conclude that Redman knew of facts or intentionally disregarded facts that created a high probability of injury. In particular, the Manns cite to evidence suggesting that Redman knew Anderson had a long history of reckless driving, speeding, and other traffic violations when it hired him as a professional commercial driver in the spring of 2008.

Anderson's driving record from 2003 through 2005 included two careless driving convictions, two reckless driving convictions, and three speeding convictions. Dkt. 39-1. His record for that period also showed three other moving violation convictions, and included five convictions for operating a motor vehicle without insurance. Dkt. 39-1. The State of Montana revoked Anderson's drivers license in 2005 based on his status as a habitual offender. Dkt. 39-1; 39-2, at 5-6. Anderson explained at his deposition that he was allowed a probationary drivers license in October 2006, but was not able to re-test for an unrestricted commercial drivers license until after he was hired by Redman in the spring of 2008. Dkt. 39-2, at 6-7; 39-4, at 8.

According to Anderson, he discussed his driving record with Redman manager Barney Pounds when he first contacted the company to inquire about a job. Dkt. 39-2, at 9-10. Anderson also stated that he provided Redman with a copy of his driving record before the company decided to hire him. Dkt. 39-2, at 10. Redman president John Eberhardt confirmed as much at his deposition, indicating that Anderson's driving record raised "a big red flag" when they were considering his application. Dkt. 39-4, 6. Eberhardt knew before Anderson was hired that he did not have a commercial driver's license or any past experience as a commercial driver. Dkt. 39-4, at 8-9. Viewed in the light most favorable to the Manns, these facts would allow a reasonable trier of fact to conclude that Redman knowingly hired an inexperienced and reckless driver. A reasonable trier of fact could likewise conclude based on such evidence that Redman knew of facts or intentionally disregarded facts that created a high probability of injury to the Manns.

The Manns have also come forward with sufficient evidence to raise a genuine issue of material fact as to whether Redman consciously failed to properly maintain the semi-truck and trailer and knowingly allowed Anderson to drive it without working trailer, brake, and/or signal lights. In this regard, Redman presents deposition testimony from Eberhardt and Pounds to the effect that

PAGE 11

Redman put "strong emphasis" on pre-trip inspections. Dkt. 30-5, at 6; Dkt. 30-6, at 26. Safety manager Pounds stated that if a problem existed with a truck, the driver was not to move the truck until the problem was fixed. Dkt. 30-6, at 27. In contrast, Anderson's deposition testimony reflects that Redman never taught him anything about pre-trip inspections and he had never heard of the seven-step inspection method. Dkt. 39-2, at 20. Anderson states that he does not know whether he checked the Redman's vehicle's brake lights before he began driving on the day of the accident. Dkt. 39-2, at 21. After the accident, Anderson found that the wiring for the lights on the trailer had been torn out of the back of his tractor cab and were hanging bare between the truck and trailer. Dkt. 39-2, at 26. Anderson claims he does not know how or why the cable got torn out. Dkt. 39-2, at 26-27. Viewed in the light most favorable to the Manns, this evidence makes the question of whether Redman knowingly failed to adequately maintain the tractor-trailer a factual one for the trier of fact to resolve.

The Manns have also pointed to evidence suggesting that Redman may have deliberately proceeded to act with indifference to, or in conscious or intentional disregard of, the high probability of injury. In particular, the Manns cite deposition testimony indicating that, despite Anderson's inexperience and poor driving record, Redman provided him with little supervision or training.

According to Anderson, for example, Redman did not do anything to help him in terms of safe driving techniques, training, or educating him on how to operate his new vehicle and trailer. Dkt. 39-2, at 18. Anderson stated that he never went to any kind of classroom meetings or seminars or anything like that where Redman talked about how to be a safe driver,. Dkt. 39-2, at 18. Anderson also testified Redman never taught him anything about pre-trip inspections, and that he had never heard of the seven-step inspection method. Dkt. 39-2, at 144. Barney Pounds, the operations manager in charge of safety at Redman, essentially confirmed that Anderson's safety training consisted of riding with a delivery driver for part of one day and riding with Redman driver Luke Powell for his first few weeks on the job. Dkt. 39-9, at 17. As Anderson explains it, however, Powell did not provide him with any training on how to drive or maneuver the truck and trailer. Dkt. 39-2, at 11-111.

    Viewing such testimony in a light most favorable to the Manns, a reasonable trier of fact could conclude that Redman deliberately acted in conscious or intentional disregard of, or with indifference to, the high probability of injury by allowing an inexperienced and inadequately trained driver to operate one of its vehicles. Whether the Manns will ultimately be able to prove by the requisite clear and convincing evidence that punitive damages are warranted on

PAGE 13

that basis, of course, remains to be seen. In the meantime, however, it is sufficient that the Manns have asserted a valid claim for punitive damages against Redman and pointed to enough evidence of record to raise a genuine issue of material fact as to whether Redman acted with actual malice. Defendants' motion to strike the Mann's punitive damages claim should be denied accordingly.

Because the Manns have a viable claim for punitive damages against Redman based on the company's alleged conduct in hiring, supervising, and training Anderson, it cannot be said as a matter of law that the Manns' direct negligence claim is entirely duplicative of their respondeat superior claims. See *Durben*, 503 S.E.2d at 619. In light of the fact that Redman faces the potential of additional liability in the form of punitive damages, Defendants' motion for summary judgment on the Manns' claim for negligent hiring, training, and supervision should be denied.

### III.     Motion to Bifurcate

Defendants have moved to bifurcate trial of the liability and damages issues pursuant to Federal Rule of Civil Procedure 42(b), which authorizes the court to order a separate trial of any claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize." As the moving party, Defendants bear the burden of showing that bifurcation is warranted. *Burton v. Mountain West*

PAGE 14

*Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 612 (D. Mont. 2003). The district court has broad discretion in determining whether or not to bifurcate issues for trial. *See e.g. M2 Software Inc. v. Madacy Entertainment,* 421 F.3d 1073, 1088 (9th Cir. 2005).

Defendants argue that bifurcating the upcoming trial into liability and damages phases will promote judicial economy because it "could potentially transform the trial from a two-week trial to a two-day trial." As Defendants see it, the liability phase of trial would be relatively straightforward and brief, while the damages phase would be far more complicated and lengthy. Assuming they prevail on liability, Defendants argue that a great deal of time would be saved by avoiding trial on the issue of damages.

Defendants also maintain bifurcation is necessary to eliminate the potential for prejudice because it is possible "that the jury will allow evidence submitted on negligent hiring, training, and supervision to inform its decision on liability generally, even though such evidence is relevant only to punitive damages. " Dkt. 33, at 9.

The Manns view the situation differently, and argue that bifurcating the trial would actually defeat the goal of judicial economy because "several witnesses would have to testify in both phases of trial, and bifurcation would lead to serious

jury confusion." Dkt. 36, at 7. For example, the Manns contend it would be confusing for the jury to preclude evidence relating to Redman's negligent hiring, training, and supervision claims "early in the trial, and then after a liability finding by the jury, return to have the parties present (again) liability-related evidence on the (limited) issues of negligent hiring, training, and supervision." Dkt. 36, at 10.

Whether to bifurcate under the circumstances is a question that is better left to the discretion of the presiding judge, who can make an informed decision at the time of trial based on a fully developed record. Accordingly, Defendants' motion to bifurcate is denied at this juncture subject to renewal at the final pretrial conference.

## IV. Motions in Limine

Defendants have moved in limine to exclude any evidence or argument relating to allegations that:

1. The Manns are entitled to damages for money transferred from the Manns' personal accounts to the Mann Financial Services account;

2. The Manns are entitled to damages for their attempted § 1031 exchange;

3. The Manns are entitled to $51,625 in damages to make their house livable after a remodel was cancelled;

4. The Manns are entitled to damages for losses allegedly suffered by Mann Financial Services, unless the Manns comply with their

> discovery obligations and produce accounting records for Mann Financial Services; and
>
> 5. Defendant Redman Van & Storage Co., Inc. is subject to liability or damages, other than punitive damages, under the Manns' direct liability claims against Redman.
>
> Dkt. 35, at 2.

"To exclude evidence on a motion in limine 'the evidence must be inadmissible on all potential grounds.'" *Wood v. Mt. Dept. of Revenue*, 2011 WL 4348301 *2 (D. Mont. Sept. 16, 2011) (quoting *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 (D. Mont. Oct. 26, 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*

With regard to the first category of evidence identified above, the Manns clarify in response to Defendants' motion that they "do not seek, as an element of their damages, compensation for the personal funds loaned to Mann Financial Services." Dkt. 40, at 2 n. 1. Because the Manns agree that the loan itself is not an economic loss for which they seek to recover, Defendants' motion to exclude this evidence is largely moot. To the extent the Manns maintain that evidence of the loan may be relevant because it "bears on the actual losses (i.e., why the loan

PAGE 17

was required) suffered by the plaintiffs," the admissibility of such evidence is more appropriately addressed by the presiding judge at the time of trial.

The same can be said for the rest of Defendants' motions in limine, which raise evidentiary issues that are better addressed by the presiding judge in the context of the upcoming trial. It is not clear on this record whether the evidence Defendants seek to exclude is "inadmissible on all potential grounds." *Wood*, 2011 WL 438301 *2. Defendants motions in limine are denied accordingly, subject to renewal at trial when the evidence can be evaluated in the proper context.

## V. Conclusion

For all of the above reasons,

IT IS RECOMMENDED that:

(1) Defendants' Motion for Summary Judgment on Plaintiffs' Direct Negligence Claims Against Redman Van and Storage Co., Inc. be DENIED, and;

(2) Defendants' Motion to Strike Plaintiffs' Punitive Damage Claims be DENIED. Furthermore,

IT IS ORDERED that:

(1) Defendants' Motion to Bifurcate Liability and Damages Issues is DENIED without prejudice, subject to renewal at the final pretrial conference, and

(2) Defendants' Motions in Limine are DENIED without prejudice, subject to renewed objections at trial.

DATED this 17th day of October, 2011

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge