IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| DAVID K. MANN, ELIZABETH S. MANN, DELANEY MANN, and MAKENZIE MANN, | ) ) ) ) | CV 10-128-M-DLC |
|---|---|---|
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| REDMAN VAN & STORAGE CO., INC. | ) ) | |
| Defendant. | ) ) | |

## I. Introduction

Following a jury trial held in this matter on January 23-28, 2012, and which resulted in a defense verdict, Plaintiffs have filed a motion for a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A). Plaintiffs argue a new trial is warranted because the jury's verdict went against the evidence and because this Court made

prejudicial errors in instructing the jury. For the reasons that follow, the motion for a new trial is denied.

## II. Background

Plaintiffs brought this action against Defendant Redman Van & Storage Company claiming they suffered injuries when a tractor-trailer operated by Redman Van & Storage Company employee Rowdy Anderson collided with a vehicle driven by Plaintiff David K. Mann and in which the other Plaintiffs were riding as passengers. Plaintiffs alleged the collision occurred as a result of Rowdy Anderson's negligence in operating the tractor-trailer and Redman Van & Storage Company's negligence in hiring, training, and supervising Rowdy Anderson and in maintaining the tractor-trailer involved in the accident.[1] Plaintiffs also sought punitive damages. Following a six-day trial the jury returned a verdict finding no negligence on the part of Defendant Redman Van. In response to the first question on the Verdict Form, which asked, "Was the Defendant negligent?", the jury answered, "No." Verdict Form (Doc. No. 102) at 1.

## III. Analysis

Plaintiffs now seek a new trial on two separate grounds. First, Plaintiffs

---

[1]Anderson was dismissed as a Defendant on motion of the Plaintiffs after Defendant Redman Van admitted that it would be vicariously liable for Anderson's acts and omissions in relation to the collision.

contend that the jury's verdict is inconsistent with Rowdy Anderson's testimony regarding his conduct in relation to the collision, during which the Plaintiffs believe Anderson admitted to acting negligently and to performing acts that constitute negligence *per se* under Montana law. In light of Rowdy Anderson's testimony and the Court's instructions on negligence per se, Plaintiffs argue, the verdict goes against the great weight of the evidence and therefore should not stand. Plaintiffs also request a new trial on the ground that the Court committed prejudicial error when it failed to instruct the jury that violations of the Federal Motor Carrier Safety Regulations constitute negligence *per se* and failed to give a spoliation instruction as Plaintiffs had requested. Defendant Redman Van opposes the motion.

A.  **Rowdy Anderson's Testimony**

Rule 59(a)(1)(A) authorizes a district court to grant a new trial following a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The grounds for which a new trial may be granted are if the verdict "is contrary to the clear weight of the evidence, is based upon false of perjurious evidence, or to prevent a miscarriage of justice" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Even if the

verdict is supported by "substantial evidence," a district court must set it aside if, "in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." Molski, 481 F.3d at 729.  Due to the inherently fact-specific nature of the Rule 59(a) inquiry, a district court's order denying a motion for a new trial will generally stand on appeal provided there is some reasonable basis for the jury's verdict.  Id.  It is reversible error, however, for a district court to deny a Rule 59(a) motion for new trial where there is an "absolute absence of evidence to support the jury's verdict."  Id. (quoting Urti v. Transp. Commercial Corp., 479 F.2d 766, 769 (5th Cir. 1973)).

Here Plaintiffs argue that the verdict was against the clear weight of the evidence because the testimony of Rowdy Anderson shows that (1) Anderson acted negligently in relation the collision and (2) that Anderson's conduct violated Montana transportation statutes and therefore constitutes negligence *per se*.  They point to the following testimony by Anderson:

> Q.   So turned around to the right side because you didn't know what else to do, jackknifed the truck, and those cables rip out. And you get ready to go back on the highway and, I mean, might not have even known it but your trailer lights were dead, right?
>
> A.   Correct.
>
> *   *   *

> Q. And if there's one thing for sure as you sit here now looking back at that accident, you know and you wish those trailer lights would have been working. Because even if you didn't check your mirrors, if those lights had been working Kelly Mann and his wife and family never would have pulled into that left lane and moved around you on the left because you would have told them, *Hey, I'm going to brake. I'm going to slow. I'm going to turn*, by those signals; isn't that true?
>
> A. Correct.
>
> Q. And you wish those trailer lights would have been working, don't you?
>
> A. Oh, of course.
>
> Q. If those trailer lights would have been working or if you would have looked in those mirrors, we would never be here today. Isn't that true?
>
> A. Yes.

Anderson Trial Transcript (Doc. No. 117) at 15, 22-23.

In light of that testimony, Plaintiffs argue, the jury should have found that Anderson acted negligently and had no choice but to find, at a minimum, that Anderson was negligent *per se* by violating Montana Code Ann. §§ 61-8-336 and 61-9-218.

Quoting the provisions of Mont. Code Ann. § 61-8-336(1), Instruction No. 15 stated that the jury must find the defendant negligent if the defendant violated the following law:

> A person may not turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless the movement can be made with reasonable safety and until an appropriate signal has been given. A person may not turn a vehicle without giving an appropriate signal in the manner provided in this section.

Instruction No. 15, Doc. No. 95 at 15.

Instruction No. 16 directed the jury to find the defendant negligent if it found a violation of Mont. Code Ann. § 61-9-218(1), which provides in part:

> A motor vehicle or combination of vehicles may be equipped and when required under this chapter must be equipped with signal lamps showing to the front and rear for the purpose of indicating an intention to turn either to the right or left... The lamps showing to the rear must be located at the same level and as widely spaced laterally as practicable. When in use, the lamps must display a red or amber light, or a shade of color between red and amber, visible from a distance of not less than 300 feet to the rear in normal sunlight. When actuated the lamps must indicate the intended direction of turning by flashing the lights showing to the front and rear on the side toward which the turn is made.

Instruction No. 16, Doc. No. 95 at 17.

Contrary to the Plaintiffs' argument, the evidence at trial did not compel a finding by the jury of negligence or negligence *per se*. There is more to Rowdy Anderson's testimony than is reflected in the excerpts cited by the Plaintiffs; taken as a whole Anderson's testimony provides the jury with no clear proof as to when and how the lighting pigtail connecting the tractor and trailer units became

disconnected. When asked directly if he knew when the pigtail was disconnected, Anderson answered, "My understanding now is that it is a possibility that when I had made the blind-side maneuver, that it very well could have pulled the lights out. But can I guarantee that? I don't know. I don't know when it happened." Anderson Trial Transcript (Doc. No. 117) at 46-47. When asked by the Plaintiffs' counsel if the pigtail came out during the blind-side maneuver, Anderson responded, "I don't know for sure, but it very well could have, yes." Id. at 14.

This testimony by Anderson proves only that Anderson has no personal knowledge of when or how the pigtail was disconnected. His speculation on the answer to that question is entitled to no particular weight, and certainly does not enable a finding by the "clear weight of the evidence" that the pigtail came out during the blind-side turn. The evidence introduced at trial does not permit a definitive answer on the question of when the pigtail was disconnected. The jury could have concluded that it happened during the blind-side turn or during the collision. There is evidence and testimony to support inferences in either direction, but neither view has the support of the "clear weight" of the evidence.

The record provides a sufficient basis for concluding that Anderson acted in compliance with the relevant statutes and the pigtail came out during the collision. Anderson testified that he engaged his turn signal before making the turn in

question. Doc. No. 117 at 43-44. He stated that everything was in good working order on the tractor-trailer during his morning inspection on the day of the collision, and that the signal lights on the tractor were engaged and working after the collision. Id. at 38-39, 46. Anderson stated that the failure of a pigtail connection was "not a common occurrence" and that such a possibility did not cross his mind on the day of the collision. Id. at 47. Defendant Redman's safety manager, Barney Pounds, who has logged hundreds of thousands of miles as a trucker, testified that it is "highly unusual" for a pigtail to come loose, and that it has never happened to him in his entire career. Pounds Trial Transcript (Doc. No. 116) at 63-64. This evidence supports the jury's verdict, and Plaintiffs have failed to show that the verdict is contrary to the clear weight of the evidence.

Plaintiffs argue that this Court "clearly recognized the overwhelming evidence of bad acts by Anderson and Redman" when it denied the Defendant's Rule 50 motion for judgment as a matter of law. Doc. No. 124 at 6. This argument misstates the Court's ruling, and the legal standards associated with Rule 50. The Court's recollection of its ruling denying the Rule 50 motion differs from the Plaintiffs' characterization. The Court explained to the parties its view that Rule 50 establishes a high bar for taking issues out of the hands of the jury. The Court also stated that its ruling constituted nothing more than a finding that

there is a legally sufficient evidentiary basis upon which the jury could find for the Plaintiffs. The standard under Rule 50 requires the court to view the evidence in the light most favorable to the non-moving party and, without making credibility determinations or weighing the evidence, to decide whether the evidence permits only one reasonable conclusion. E.E.O.C. v. Go Daddy Software, 581 F.3d 951, 961 (9th Cir. 2009). With regard to the instant motion, Plaintiffs can only succeed if the verdict is contrary to the clear weight of the evidence. The Court's ruling in favor of the Plaintiffs on the Defendant's Rule 50 motion does not in any way foreclose a ruling adverse to the Plaintiffs under Rule 59.

**B.  Jury Instructions**

Plaintiffs also argue for a new trial due to errors in instructing the jury. Specifically, Plaintiffs argue the Court should have instructed the jury that violation of the Federal Motor Carrier Safety Regulations constitutes negligence *per se*, and that the Court should have given a spoliation instruction in relation to Redman Van's alleged failure to maintain records as required by the Federal Motor Carrier Safety Regulations. "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are ... bases for a new trial" under Rule 59. Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).

Plaintiffs have not demonstrated that the Court's instructions to the jury

were inadequate or in error. Plaintiffs have not identified any legal authority to support their argument that violation the Federal Motor Carrier Safety Regulations constitutes negligence *per se* in Montana. In fact, as United States Magistrate Judge Jeremiah C. Lynch explained in <u>Parrick ex rel. Parrick v. FedEx Ground Package System, Inc.</u>, it would have been a violation of well-established Montana and Ninth Circuit law to give the instruction advocated by Plaintiffs:

> Plaintiff, of course, views the significance of the [Federal Motor Carrier Safety Regulations] violations he alleges differently, and maintains they do provide a legitimate basis for imposing negligence per se liability under Montana law. But the Montana Supreme Court has repeatedly held to the contrary, making clear that "[i]n order to impute liability to a defendant as a matter of negligence per se ... the defendant must have violated a statute, as opposed to merely an administrative regulation, safety code, or professional standard." <u>Harwood v. Glacier Elec. Co-op., Inc.</u>, 949 P.2d 651, 656 (Mont.1997) (citing several cases). Hesitant "to extend the doctrine of negligence per se beyond the statutory framework," the Montana Supreme Court has consistently determined "that violations of administrative regulations that are not specifically incorporated by statute do not constitute negligence per se." <u>Thayer v. Hicks</u>, 793 P.2d 784, 792 (Mont.1990) (citing several cases). While "[t]he violation of a non-statutory standard may be used as evidence of negligence," it does not provide sufficient "grounds on which to find the defendant negligent per se." <u>Harwood</u>, 949 P.2d at 656. <u>See</u> <u>also</u> <u>Lutz v. United States</u>, 685 F.2d 1178, 1184 (9th Cir.1982) (noting that "Montana law distinguishes between violation of a statute or ordinance and violation of the standard specified in a regulation," with the latter "to be considered as evidence of negligence.").
> 
> As these cases instruct, any violation of the non-statutory standards set forth in the Federal Motor Carrier Safety Regulations may be used as evidence of the Defendants' negligence, but does not

provide a basis for finding the Defendants negligent per se.

Parrick ex rel. Parrick v. FedEx Ground Package System, Inc., Slip Copy, 2010 WL 3614119, **2–3 (D. Mont. 2010). The jury was properly instructed as to the legal significance of the Federal Motor Carrier Safety Regulations.

Plaintiffs proposed two spoliation instructions on the fifth day of trial, both of which were refused. The instructions were similar in substance, and essentially would have instructed the jury that, to they extent that Defendant Redman Van failed to maintain records as required by law, the jury should apply a rebuttable presumption that the absent records would be favorable to the Plaintiffs. In refusing the proposed spoliation instructions, the Court stated:

> Okay. I'm going to refuse both of these instructions. There is evidence in regarding the failure to maintain records. In fact, I think there is also evidence in that maybe--maybe it was expert Allen testified in response to a question that if it wasn't written down, if it wasn't recorded, it didn't happen.
> I understand and appreciate that's going to be an argument in the case. It's an issue in the case. Parties are free to argue it, again to whatever extent they wish, but I think these instructions constitute--would be an unfair comment by the Court on this single issue.
> And I also think that they are confusing. When you get into indisputable presumptions and rebuttable presumptions in a case such as this, we get into issues regarding burden of proof and shifting of burden of proof. And I think it's--again, I think it's confusing and an unfair comment on the evidence, so I'm going to refuse them.

Transcript of Settlement of Jury Instructions (Doc. No. 111) at 24.

Plaintiffs have not cited any authority in support of their argument for a new trial due to the Court's failure to give a spoliation instruction. A district court is invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Unigard Sec. Ins. Co. v. Lakewood Engineering and Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (quoting Chambers v. NASCO, Inc., 501, U.S. 32, 43 (1991)). Those inherent powers include the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." Unigard, 982 F.2d at 368 (quoting Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980). Within that discretion lies the power to sanction a party for destruction or spoliation, either by outright dismissal of the case, see, e.g., Halaco Engineering Co. v. Costle, 843 F.2d 376; by exclusion of testimony based on evidence no longer in existence, see Unigard, 982 F.2d at 368; or by allowing the jury to draw an adverse inference against the party responsible for spoliation, see Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991).

Plaintiffs argue that the Court's failure to give their proposed spoliation instructions left Plaintiffs with "no negligence link between Redman Van and Anderson." Doc. No. 134 at 9. Such a "link" is provided by Instruction No. 9,

which advised the jury that "[a]n employer is liable for all damages caused by the negligence of its employee while acting within the scope of his employment." Doc. No. 95 at 9. Furthermore, the Plaintiffs were not precluded from presenting evidence of the absent records, or arguing the import of this to the jury, by the Court's refusal to give the offered instructions. The refusal to give a spoliation instruction was within the Court's broad discretion and was not an error justifying a new trial under Rule 59.

## IV. Order

Accordingly, IT IS HEREBY ORDERED that the Plaintiffs' Rule 59 motion for a new trial (Doc. No. 123) is DENIED.

Dated this 12th day of April, 2012.

_____
Dana L. Christensen, District Judge
United States District Court